IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID A.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 3:20-cv-00542-HZ

OPINION & ORDER

H. Peter Evans,
Evans & Evans, PC
222 NE Park Plaza Drive, Suite 113
Vancouver, WA 98684

    Attorney for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 – OPINION & ORDER

Scott Erik Asphaug
Assistant United States Attorney
District of Oregon
Renata Gowie
Civil Division Chief
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Erin F. Highland
Social Security Administration
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff David A. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction under 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on August 17, 2017, alleging an onset date of April 9, 2015. Tr. 43.[2] Plaintiff's date last insured ("DLI") is December 31, 2019. Tr. 43. His application was denied initially and on reconsideration. Tr. 15.

On February 12, 2019, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 26. On March 6, 2019, the ALJ found Plaintiff not disabled. Tr. 21. The Appeals Council denied review. Tr. 1.

///

///

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 12.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "loss of vision in right eye, depression/bipolar, [and] headaches." Tr. 149. He was 61 years old at the time of the alleged onset date. Tr. 44. He completed some college. Tr. 319. He worked full-time in a fulfillment services facility for eighteen years. Tr. 168. He performed varying warehouse work such as driving a forklift, stocking, and working in the shipping and receiving departments. Tr. 318. In 2014, Plaintiff transitioned to the construction field where he worked part-time in painting and roofing for a friend's business for about one year. Tr. 150. He stopped working in 2015 because his employer did not pay him. Tr. 32, 318.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after April 9, 2015, his alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following medically determinable impairments: history of alcohol abuse, chronic obstructive pulmonary disease (COPD), bipolar disorder with depression, mild diplopia, and hearing loss. Tr. 17. However, at step two, the ALJ also found that Plaintiff does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) his ability to perform basic work-related activities for 12 consecutive months.

Tr. 17. Therefore, the ALJ found that Plaintiff does not have a severe impairment or combination of impairments. Tr. 17. The ALJ concluded that Plaintiff is not disabled. Tr. 21.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) rejecting the opinion of consultative examiner John Adler, PsyD.; (2) finding Plaintiff's diplopia and depression nonsevere at Step Two; and (3) rejecting Plaintiff's subjective symptom testimony. This Court disagrees.

### I.   Medical Opinion Evidence

Plaintiff alleges that the ALJ erred by rejecting the medical opinion of consultative examiner, Dr. Adler. On September 30, 2017, Dr. Adler performed a clinical interview and

mental health status exam of Plaintiff. Tr. 318–21. Dr. Adler observed that Plaintiff was "pleasant, cooperative, and gave decent effort at mental tasks and history." Tr. 320. Plaintiff maintained good eye contact and was not restless or distractable. Tr. 320. His content of thought was normal and his judgment was adequate. Tr. 320. Plaintiff had somewhat rapid speech at times and demonstrated some slight signs of depression. Tr. 320. But his intellectual functioning was adequate on examination. Tr. 320.

Dr. Adler concluded that the evidence was consistent with depression, though it was not clear whether Plaintiff was actually having manic episodes or what the frequency of his depression was. Tr. 321. He noted that Plaintiff talked rapidly in the appointment, but he also found that Plaintiff's ability to concentrate was very good and that he had good memory. Tr. 321. Dr. Adler observed that Plaintiff's depression "seem[s] to interfere with daily tasks, such as motivation for personal care and chores, and also causes social isolation." Tr. 321. He found that coping with stress and mood are problems for him. Tr. 321. He also noted that "[w]hile the claimant is socially withdrawn, in other ways, his social interaction is not a problem." Tr. 321. Dr. Adler further opined that Plaintiff is capable of both simple and complex daily activities, except that he has low motivation. Tr. 321. He assessed Plaintiff's cognitive skills as good, with "no signs of problems understanding simple or complex instructions and signs of good ability at sustained attention, concentration, memory and pace." Tr. 321.

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R.

6 – OPINION & ORDER

§§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain to how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ considered Dr. Adler's opinion in his step two analysis. First, the ALJ found that his opinion was "well supported because it is based on clinic interview and mental status exam." Tr. 20–21. Second, the ALJ found Dr. Adler's opinion persuasive because it was consistent with a finding of no severe mental impairments by the state agency physicians. Tr. 21, 51, 62. He also noted that it was consistent with Plaintiff's limited mental health treatment. Tr. 21.

The ALJ did not err in his consideration of Dr. Adler's opinion. The ALJ considered the two most important factors in evaluating Dr. Adler's medical opinion—supportability and consistency—and the record supports the ALJ's conclusions. Dr. Adler's opinion that Plaintiff had no or mild limitations because of his bipolar disorder was consistent with other medical opinions in the record as well as the medical evidence, including observations by Plaintiff's doctor at his sole appointment during the relevant period. *See* Tr. 51, 62 (state agency physicians concluding Plaintiff had no limitation in understanding, remembering or applying information;

7 – OPINION & ORDER

no limitation in interacting with others; mild limitation in concentration, persistence, or pace; and no limitation in adapting or managing oneself), 310 (normal psychological observations and assessment of stable bipolar disorder without medications). The examination is also well-supported because it is based on a clinical interview of Plaintiff. In his brief, Plaintiff suggests that the ALJ rejected Dr. Adler's opinion that Plaintiff had a psychological impairment, and that the impairment had some impact on his functioning. Pl. Br. 5–6. But the ALJ found Plaintiff to have a medically determinable impairment of "bipolar disorder with depression," consistent with the opinion of Dr. Adler that Plaintiff had a depressive disorder. The ALJ also cited Dr. Adler's opinion in analyzing the severity of this impairment at Step Two, finding—consistent with Dr. Adler's opinion—no or mild limitations in the four functional areas. Tr. 20. Thus, the Court rejects Plaintiff's contention that the ALJ did not properly consider Dr. Adler's medical opinion.[3]

## II.    Step Two

Plaintiff argues the ALJ erred in finding Plaintiff's bipolar disorder and diplopia nonsevere. At step two, the ALJ determines whether the claimant's medically determinable impairment or combination of impairments is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step two is a *de minimis* screening device used to dispose of groundless claims. *Bowen*, 482 U.S. at 153–54. "An impairment or combination of impairments is not

---

[3] In arguing that the ALJ erred in his assessment of Dr. Adler's opinion and in finding Plaintiff's impairments nonsevere at Step Two, Plaintiff contends that the ALJ "failed to consider the longitudinal picture of Plaintiff's depression" and cites evidence from prior to Plaintiff's alleged onset date. Pl. Br. 7, 10. Most of this evidence, however, predates Plaintiff's alleged onset date by five years and is of limited relevance, particularly as Plaintiff was working full-time as a forklift driver during this period despite his symptoms. Tr. 292 (June 2010 appointment noting that he is still working regularly driving a forklift on a regular basis), 311 (noting in 2014 appointment that he was laid off when operations moved to Minnesota). *See also Carmickle v. Comm'r Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

8 – OPINION & ORDER

severe if it does not significantly limit your ability to do basic work activities." 20 C.F.R. § 404.1522. If the ALJ identifies at least one severe impairment, the analysis proceeds, and the ALJ is to take into account all of the claimant's limitations, regardless of whether they are severe or nonsevere. *Howard ex. rel Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing 20 C.F.R. § 416.923). Therefore, even if the ALJ fails to identify a severe impairment at step two, the error is harmless so long as he considers all of the claimant's impairments at subsequent steps of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Graybeal v. Astrue*, No. 3:10–cv–06387–PK, 2011 WL 6019434, at *6 (D.Or. Nov. 2, 2011) ("An ALJ's erroneous finding that an impairment is nonsevere constitutes harmless error, however, if the ALJ resolves step two in the claimant's favor and properly considers limitations imposed by the impairment at other steps of the sequential process.").

    A.    Bipolar Disorder

To determine whether a claimant has a severe mental impairment, the ALJ must rate the degree of functional limitation for four functional areas known as the "paragraph B" criteria: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)–(c); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ addressed all four criteria here and concluded Plaintiff's mental health impairments caused "no more than 'mild' limitation in any of the functional areas." Tr. 20. The ALJ's finding is supported by substantial evidence.

First, the ALJ found that Plaintiff did not have any limitation on his ability to understand, remember, or apply information. Tr. 20. In Dr. Adler's mental status examination of Plaintiff, he recalled two out of three items after a delay, had accurate memory for up to thirty-five minutes, and went up to seven and backwards without issues on a digit span. Tr. 320. Plaintiff's own

testimony also shows he can understand and remember information: he reads books, rides bikes, performs household chores, and cares for a cat. Tr. 34, 174; *See also* Tr. 178 (no problems following written instructions and usually able to follow spoken instructions). Plaintiff did all these actions on his own, without support or reminders. Tr. 175, 177. Dr. Adler concluded that Plaintiff had a good memory and could understand simple or complex instructions. Tr. 321.

Second, the ALJ found that Plaintiff did not have any limitation interacting with others. Tr. 20. Plaintiff reported having good relationships with his siblings and that he goes to the library, shops in stores, and took a drawing class. Tr. 319–20. In his consultative examination, Dr. Adler noted that Plaintiff appeared pleasant, cooperative, and maintained appropriate eye contact. Tr. 320. Dr. Adler observed that Plaintiff is socially withdrawn but that, "in other ways, his social interaction is not a problem." Tr. 321; *see also* Tr. 177–78 (noting he spends time with others once or twice a week and generally gets along with authority figures).

Third, the ALJ found that Plaintiff had mild limitations concentrating, persisting, or maintaining pace. Tr. 20. Plaintiff testified that he loves to read and can drive. Tr. 319. Plaintiff also testified and reported that he is independent with his personal care, managing money, shopping, and doing household chores. Tr. 34, 176–77. He did not identify any problems with concentration or completing tasks. Tr. 178. In his consultative examination, Plaintiff was able to perform simple calculations correctly, and Dr. Adler observed that Plaintiff did not appear to be restless or very distractable. Tr. 320. Dr. Adler also observed that Plaintiff struggles with low motivation and coping with stress but showed "signs of good ability at sustained attention, concentration, memory, and pace." Tr. 321.

Finally, the ALJ found that Plaintiff did not have any limitation adapting or managing himself. Tr. 20. Dr. Adler concluded that Plaintiff's depression "seem[s] to interfere with daily

tasks, such as motivation for personal care and chores." Tr. 321. But consultative examiner Mahnaz Ahmad, M.D., observed that Plaintiff is "independent [in] activities of daily living and instrumental activities of daily living." Tr. 325. And, as the ALJ points out again, Plaintiff stated in his function report and testified that he is independent with his personal care, managing money, shopping, and doing chores. Tr. 34, 175–177.

In the aggregate, the ALJ concluded that Plaintiff's bipolar disorder caused no more than a mild limitation in any of the functional areas. The ALJ's conclusion that Plaintiff's bipolar depression was not severe is supported by substantial evidence in the record.

B.      Diplopia

The ALJ also found that Plaintiff's diplopia was not severe. Tr. 19. Plaintiff began experiencing double vision after surgery to treat an aneurysm in 2008. Tr. 269, 292, 324. During the relevant period, Plaintiff saw two separate doctors for his diplopia. First, Plaintiff's treating provider Timothy Janzen, M.D., examined Plaintiff on May 23, 2017. Tr. 309. Dr. Janzen observed that Plaintiff's right eye is slightly more dilated than his left eye and that his eyes do not move entirely in conjunction with each other. Tr. 310. Dr. Janzen diagnosed Plaintiff with mild diplopia secondary to surgery to repair his brain aneurysm. Tr. 310. Second, on October 2, 2017, Dr. Ahmad observed that Plaintiff's right eye does not equally constrict to light when compared to the left eye and noted that Plaintiff's visual acuity test without glasses was 20/50. Tr. 326. He also noted that Plaintiff's confrontational visual fields were within normal limits.[4] *Id*. Dr. Ahmad diagnosed Plaintiff with right eye diplopia and incomplete constriction of the right

---

[4] A confrontational visual field test is "[a] common way for [a] doctor to screen for any problems in your visual field." *Visual Field Test*, American Academy of Ophthalmology (Mar. 10, 2022), https://www.aao.org/eye-health/tips-prevention/visual-field-testing.

11 – OPINION & ORDER

pupil to light. Tr. 328. He also observed that Plaintiff's "complaints about his . . . vision is not impacting his day to day life in any significant way." Tr. 328.

A diagnosis alone does not establish the severity of an impairment. *See Key v. Heckler*, 754 F.2d 1545, 1549–50 (9th Cir. 1985). Both Dr. Janzen and Dr. Ahmad qualified their diplopia diagnoses of Plaintiff. Dr. Janzen noted that, while Plaintiff's eyes do not move completely in conjunction with one another, he had a "mostly conjugate" gaze and that his right eye was just "slightly" more dilated than the left. Tr. 310. He concluded that Plaintiff's diplopia is "mild." Tr. 310. Dr. Ahmad's assessment of Plaintiff's peripheral vision was "grossly within normal limits." Tr. 326. Dr. Ahmad concluded that Plaintiff's vision is not impacting his daily life in any significant way. Tr. 328. Plaintiff also performed well in his job driving a forklift despite his diplopia and continues to maintain the ability to drive. Tr. 292, 176. Thus, the ALJ relied on substantial evidence in the record to conclude that Plaintiff's diplopia was not severe. *See Ditto v. Commissioner*, 401 Fed. Appx. 192, 193 (9th Cir. 2010) (affirming ALJ's finding that claimant's diplopia was not severe because it was supported by doctor's characterizations of claimant's diplopia as "mild," other medical evidence, and testimony).

### III.    Subjective Symptom Testimony

Plaintiff argues the ALJ erred in discounting his subjective symptom testimony. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. In assessing a claimant's testimony about subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of this

analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim, 763 F.3d at 1163*; *Tommasetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). But a general assertion that the plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan,* 169 F.3d at 599.

Plaintiff has both mental and physical impairments. His physical impairment is diplopia. His right eye does not move in conjunction with his left eye and causes him to see double when he looks out of his peripheral field of sight. Tr. 310, 324. Plaintiff testified that his double vision interferes with his depth perception and ability to read and watch television. Tr. 35. Plaintiff

13 – OPINION & ORDER

reported that he has issues with his balance when he makes sudden movements, Tr. 36–37, 324, but he denied ever falling, Tr. 324.

His mental impairment is bipolar disorder with depression, making him disengage from people. Tr. 178. He reported he was previously laid off or fired due to problems getting along with other people. Tr. 178. Sometimes, his bipolar disorder scares him because his mind begins to race or he stops caring. Tr. 39–40. Worrying thoughts keep him from falling and staying asleep. Tr. 325. Plaintiff testified that his bipolar disorder negatively impacts his memory and ability to focus and had worsened over the past three years. Tr. 38–39.

At the time of the hearing, Plaintiff testified that he lives alone with a cat that he cares for daily. Tr. 33, 174. He begins his typical day by waking up and walking to a convenience store to get a newspaper. Tr. 174. He then returns home to make himself breakfast, feed the cat, water the roses outside his apartment, read the newspaper, and attempt the daily newspaper puzzles. Tr. 174. Some days, he collects redeemable cans and bottles since he is not working. Tr. 174. He shops for groceries two or more times per week. Tr. 176. When he is done with outside activities, he returns home to make lunch and dinner and read or watch television for the rest of the day. Tr. 174.

The ALJ provided three reasons for discounting Plaintiff's subjective symptom testimony: (1) Plaintiff's activities of daily living; (2) lack of mental health treatment, and (3) lack of support from the objective medical evidence. Because two of these reasons are clear, convincing, and supported by substantial evidence in the record, the ALJ did not err in discounting Plaintiff's subjective symptom testimony.[5]

---

[5] Plaintiff also suggests that it was an error to consider Plaintiff's symptom testimony at step two. Pl. Br. 6. But credibility evaluations may be considered in a step two analysis, particularly where—as here—there is a conflict between a plaintiff's statements and the medical evidence.

14 – OPINION & ORDER

A.     Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis for an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility, *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). To impact a claimant's credibility, the activity has to be "inconsistent with the claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

Here, the ALJ found that Plaintiff's activities of daily living "are consistent with a finding that he does not have a severe impairment or combination of impairments." Tr. 19. The ALJ stated that Plaintiff is independent with his personal care, managing his finances, purchasing groceries, and doing household chores. Tr. 19. The ALJ noted that Plaintiff could bike, read, care

---

*Cf. Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (finding the ALJ's reasons for rejecting the plaintiff's testimony at step two were not "clear and convincing . . . when balanced against [the plaintiff's] doctors' contemporaneous observations, some objective tests, and [the plaintiff's] subjective complaints"). Further, the medical evidence in this case alone, which is key to the ALJ's analysis, supports the ALJ's finding that Plaintiff does not have any severe impairments. *Id.* at 687 ("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'").

for a cat, do puzzles, bake, fish, play cards, and fix things. Tr. 19. The ALJ also noted that Plaintiff could drive despite his diplopia. Tr. 19. Finally, the ALJ noted that Plaintiff continued to look for labor-type jobs after he stopped working for his previous employer as a laborer. Tr. 19.

The ALJ's findings are supported by substantial evidence. Plaintiff testified that he prepares his own meals daily, does household chores on his own, continues to bike, and shops for himself about twice per week. Tr. 34, 176. While Plaintiff testified that he does not drive anymore, his reason for not doing so is that he could not afford the insurance, not because of his conditions. Tr. 34. Indeed, Plaintiff reported no difficulty driving. Tr. 176 (reporting no difficulty driving in function report), 319 (notes that he usually travels by driving). Plaintiff described fixing things, completing puzzles, baking, fishing, hiking, and playing cards as his hobbies and interests. Tr. 177. Plaintiff also testified that he continues to look for labor-type jobs, like mowing lawns. Tr. 33. These activities are inconsistent with his testimony that he has difficulty with depth perception, vision, balance, and concentration. Further, continuing to look for work reasonably casts doubt on Plaintiff's allegations of disability. *See Ghanim,* 763 F.3d at 1165 (finding that holding one's self out as capable of work "cast[s] doubt on a claim of disability"). Thus, the ALJ's finding that Plaintiff's subjective complaints are inconsistent with his activities of daily living is clear and convincing.

B.   Lack of Medical Treatment

An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony

regarding severity of an impairment.") (internal quotation marks omitted). Conservative treatment and failure to seek out treatment can be "powerful evidence regarding the extent to which [a claimant] is in pain." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, no adverse credibility finding is warranted where a claimant has a good reason for failing to obtain treatment. *See Orn* 495 F.3d at 638. Gaps in medical treatment can also support an adverse credibility determination as long as the failure to obtain treatment is not due to the claimant's lack of funds or another "good reason[]." *Id*. at 638; *see also* SSR 16-3p, 2016 WL 1119029, at *8-9 (Commissioner will not find an individual's symptoms inconsistent with a lack of treatment without considering possible reasons, including the inability to pay for treatment).

Here, the ALJ discredited Plaintiff's symptom testimony about the severity of his bipolar disorder because the record did not show that Plaintiff sought mental health counseling, had psychiatric hospitalization, or any other mental health treatment during the relevant period. Tr. 19. This was an error. Though Plaintiff reported to one provider that he had stopped taking Seroquel for his bipolar disorder because he did not need it any longer, Tr. 309, 311, he consistently reported that he had stopped his medication and could not pursue counseling because he did not have insurance, Tr. 39 (testified that he was not taking medications because he did not have insurance); 175 ("I cannot afford medications! I have no health insurance."), 311 (reporting he is not interested in seeing a mental health provider because "he doesn't feel that's necessary and he doesn't want to pay the bills"), 325 (reported that he stopped taking medication because he had no health insurance). It is an error for the ALJ to reject Plaintiff's testimony for conservative treatment when they have a good reason for not seeking treatment. *See Trevizo,* 871 F.3d at 680–81 ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds."). Further, the lack of psychiatric

hospitalization does not establish that Plaintiff is unable to work due to his impairments. *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) ("A claimant may suffer from mental health impairments that prevent him from working but do not require psychiatric hospitalization."). Thus, the ALJ's reasoning is not clear or convincing.

      C.      Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The ALJ may also consider the effectiveness of any medication. *See Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."). And in some cases, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective, physical basis by claimant's treating physician."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain). But this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ found Plaintiff's testimony was inconsistent with the objective medical evidence. Tr. 19. The ALJ found that Plaintiff's diplopia was characterized as mild, citing medical records from Dr. Janzen and a vision test conducted by consultative examiner Dr. Ahmad. Tr. 19. The ALJ also found that Plaintiff's bipolar disorder "do[es] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." Tr. 19. In making this finding, the ALJ cited observations from Dr. Janzen at his only appointment for his conditions during the relevant period along with the report from consultative examiner Dr. Adler. Tr. 19–20.

The ALJ's finding is supported by substantial evidence. As to his vision impairment, multiple providers concluded that Plaintiff's dipoplia was mild and did not interfere with his day-to-day activities. Dr. Janzen found Plaintiff's right eye was slightly more dilated than the left and that he has a "mostly conjugate gaze." Tr. 310. He assessed plaintiff with mild diplopia. Tr. 310. And Dr. Ahmad conducted vision testing, which revealed his "confrontational visual fields [were] grossly intact within normal limits." Tr. 326. Dr. Ahmad also concluded that his vision was not "impacting his day to day life in any significant way." Tr. 328. These findings conflict with Plaintiff's testimony that he has difficulty with depth perception, balance, and other daily activities due to his vision.

Turning to Plaintiff's mental health impairments, the record shows that Plaintiff's bipolar disorder was stable and mild without treatment during the relevant period. Plaintiff's treating provider observed normal mood and affect with no other psychiatric symptoms at his only appointment after his alleged onset date in May 2017. Tr. 310. He concluded that Plaintiff's bipolar disorder was "currently fairly stable" without medications. Tr. 310. Dr. Adler similarly observed only mild symptoms, noting slight signs of depression in the office and rapid speech at

times but otherwise normal results on Plaintiff's mental status exam. Tr. 310. These records conflict with Plaintiff's testimony that he struggles with racing thoughts, memory, and focus.

The objective medical evidence in the record shows that Plaintiff's symptoms were not as severe as he alleged. While a lack of support from the objective medical evidence cannot be the only reason for discounting Plaintiff's testimony, inconsistencies with Plaintiff's activities of daily living also support the ALJ's finding. Accordingly, the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

## CONCLUSION

Based on the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: _____April 4, 2022_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge

20 – OPINION & ORDER